[No. 28755-6-III.    Division Three.    May 24, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. ALLAN L. TURNIPSEED, *Appellant*.

*Janet G. Gemberling* (of *Gemberling & Dooris PS*), for appellant.

*Steven J. Tucker, Prosecuting Attorney,* and *Mark E. Lindsey, Deputy,* for respondent.

¶1 SIDDOWAY, J. —Allan L. Turnipseed was convicted of first degree manslaughter with a firearm enhancement after a hostile confrontation with a stranger driving through his neighborhood resulted in Mr. Turnipseed's fatally shooting the victim. On appeal, he argues that partially inaudible videotaped testimony presented to the jury violated his Sixth Amendment right to confrontation, that the trial court erred in giving a first aggressor instruction, and that his sentencing enhancement must be overturned in light of *State v. Bashaw*.[1] We find that presentation of the video-taped testimony was error where the court lacked information on the substance of the omissions but was harmless, that the first aggressor instruction was properly given, and that the error in the sentencing enhancement instruction established by *Bashaw* cannot be raised for the first time on appeal. We therefore affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 On June 13, 2007, Allan Turnipseed and his friend Jeffrey Salsbury were standing along a street behind Mr. Turnipseed's house in Spokane when Joshua Smith drove by and his passenger threw a beer can out of the car window. Mr. Turnipseed told the passenger to "pick up your damn garbage." Report of Proceedings (RP) at 900. In response, Mr. Smith jumped from his car without putting it in park, began rummaging through its trunk, and approached Mr. Turnipseed with what appeared to be a black bar. Mr. Turnipseed ran into his home to call police, and Mr. Smith got back into his still-rolling car and sped off.

---

[1] 169 Wn.2d 133, 234 P.3d 195 (2010).

¶3 The next day Mr. Turnipseed was driving near his home when he saw Mr. Smith drive by again. After passing and recognizing each other, Mr. Turnipseed abandoned his planned errand, turned around, and stopped near his home, partially blocking Mr. Smith's egress. After Mr. Smith dropped off a passenger who resided several houses down the street, he turned around and drove alongside Mr. Turnipseed's car, driver's side to driver's side, and the two renewed a belligerent exchange. Both stepped from their cars, and Mr. Smith opened his trunk, pulled out a tire iron, and came toward Mr. Turnipseed, at which point Mr. Turnipseed pulled out a handgun and told him to "drop it." RP at 918. After several demands by Mr. Turnipseed that Mr. Smith drop the tire iron, Mr. Smith threw it to the ground and it bounced under his car. Mr. Turnipseed placed the handgun in his back pocket, but their hostile exchange continued. Mr. Smith stepped back into his car long enough to move it and retrieve the tire iron and threw it in the back seat of his car, all the while making threats, according to Mr. Turnipseed. Mr. Turnipseed again pulled out his handgun and ordered Mr. Smith not to leave, stating that the police had been called and he was making a citizen's arrest. Mr. Smith ignored Mr. Turnipseed and attempted to drive away; as he did, Mr. Turnipseed fired two shots into the car, the second fatal. Mr. Turnipseed was charged with second degree murder.

¶4 At trial, Mr. Turnipseed contended that Mr. Smith had driven the car directly toward him and had struck him, and that he fired the shots in self-defense. The State contended that it was Mr. Turnipseed who approached and ran alongside the car as it drove off, firing the second shot at close range into Mr. Smith's back.

¶5 Seven eyewitnesses to the shooting testified at trial. One (Cameron Hollinger) was a friend of Mr. Smith's and a passenger in his car at the time of the shooting. He testified that Mr. Turnipseed was never in front of Mr. Smith's vehicle and that Mr. Turnipseed shot Mr. Smith twice from alongside the car as Mr. Smith was attempting to drive off.

Three (Nicole Keesler, Colleen Palacios, and her mother, Josephine Ermitano) were neighbors characterized by the State to have no demonstrated friendship with Mr. Turnipseed or Mr. Smith. The three of them testified that Mr. Turnipseed shot into the car from the side of the car and had never been in front of it. Another three (members of the Wolcott family) were longtime neighbors of Mr. Turnipseed, characterized by the State as partial. They testified that Mr. Turnipseed was struck by the car, was carried by it for a short distance, and then rolled off the hood prior to firing two shots. Defense counsel sought to impeach Mr. Hollinger's testimony with testimony from a detective that when interviewed on the day of the shooting, Mr. Hollinger admitted contact between the car and Mr. Turnipseed, stating that Mr. Turnipseed came running at them, hit the side of the car, and spun around. The State sought to impeach two of the Wolcott witnesses with testimony from the same detective, who testified that when originally interviewed, both stated that Mr. Turnipseed stepped to the side of the car and shot in from the side, although one had told the detective that as Mr. Turnipseed moved with the accelerating car, it appeared he was being dragged by the car.

¶6 Mr. Turnipseed testified that he stepped in front of Mr. Smith's vehicle to prevent his departure, and sustained leg and foot injuries when he was struck by the front of the car as it accelerated forward. According to his account, he fired two shots in rapid succession after being struck by the car and falling to the side of it, fearing for his life.

¶7 Autopsy results revealed that one bullet entered Mr. Smith's chest from the front at a five degree downward angle, while another bullet entered Mr. Smith from behind, through the left shoulder at an upward five degree angle. The bullet entering from behind was described by the medical examiner as a "contact wound," meaning that the muzzle of the firearm was in contact with the skin when it was fired. RP at 443. It was described as the shot that caused Mr. Smith's death.

¶8 Accident reconstruction expert Tracy Hansen agreed that Mr. Turnipseed was at the driver's side window and running to keep up with the moving car while firing. Detectives testified that there was no evidence that Mr. Turnipseed made contact with any part of the car other than his palm prints on the front hood. Detective Kip Hollenbeck concluded that based upon his investigation, Mr. Turnipseed was "standing next to the car, and he had to have stuck his arm into the window and put the gun into the driver's back." RP at 535. Detective Aaron Morrison testified that the front bumper could not have been responsible for marks seen on Mr. Turnipseed's pant leg, and that Mr. Turnipseed could not have been in front of the car when Mr. Smith attempted to leave. However, Richard Chapman, the defense's accident reconstruction expert, opined that Mr. Turnipseed was in front of the vehicle, was struck by it, pushed himself over the hood of the vehicle, and fired the shots in a physically unstable state as he came off the car.

¶9 Videotaped testimony of ballistics expert Ed Robinson, a witness for the State, was also played for the jury. The testimony had been videotaped in court prior to the trial due to his anticipated unavailability, with a judge present to rule on objections. At the point in the trial when the State notified the court that Mr. Robinson, by videotape, would be its next witness, the trial court excused the court reporter. As a result of defects in the VHS (video home system) recording, there were points during the playback of the testimony when portions, including portions of the cross-examination, were distorted or inaudible. No transcript exists of the videotape as presented to the jury, or of the objection raised by defense counsel during its presentation.

¶10 After the videotape was completed and the jury was excused, the court reporter was recalled, and the trial court invited defense counsel to place his earlier objection on the record. Defense counsel noted that the tape "would black out, it would garble, . . . and, from time to time, there would be interference on it in front of the witness where you

wouldn't be able to see his face or hands as clearly." RP at 499. He also represented that "[t]here were a few sections that blanked out completely. What information was lost in that I don't know." RP at 499-500. He added, "I certainly haven't seen this video myself since April, I believe, when we did the first trial in this matter." RP at 500. The prosecutor agreed that the tape "seemed to have difficulty" and characterized it as audible "most of the time . . . except for a couple of points where it may have dropped out." *Id.*

¶11 The trial court overruled the objection, stating:

> There was probably a minute or two in the middle where some of the tracking didn't appear to follow too well and a couple times when there was some distortion on the screen that prevented the video from coming through. I don't think more than a total of ten, fifteen seconds worth of audio might have been disrupted at that point. There was another point towards the end where there was a disruption of maybe another ten seconds or so.
>
> I am reasonably satisfied that, overall, the technical problems notwithstanding, the testimony is clear enough to stand at this point.

RP at 501.

¶12 For purposes of appeal, a digital copy of the VHS tape was made eight months after trial and was transcribed for the appellate record. That posttrial transcript reveals quite a bit of coherent testimony, although the court reporter notes "recording flaw," with a corresponding gap in the transcription, at 31 points in what is a 33-page transcript. Clerk's Papers (CP) at 478-510. The transcribed testimony includes Mr. Robinson opining that the firearm used by Mr. Turnipseed has a consistent pattern of placing shells eight feet to the right and four feet behind the person shooting the gun, assuming a normal set shot. He testified that the way the gun was held can greatly impact where a casing will land, and that his opinion regarding the trajectory of the casings would be worthless if the casing hit a random intervening object.

¶13 The court instructed the jury on self-defense, including, over defense counsel's objections, providing a first aggressor instruction. The court also instructed the jury, regarding a firearm enhancement, that in answering a special verdict, "If you unanimously have a reasonable doubt as to this question, you must answer 'no.'" CP at 420 (Instruction 39).

¶14 Mr. Turnipseed was found guilty of the lesser included offense of first degree manslaughter and sentenced to 102 months plus an additional 60 months for the firearm enhancement.

## ANALYSIS

¶15 Mr. Turnipseed first argues that presentation of the videotaped deposition of Mr. Robinson violated his right to confront witnesses under the Sixth Amendment's confrontation clause, where defects in the VHS recording interfered with presentation of his full cross-examination and diminished its effectiveness. He argues that the court should have sustained his objection to its use. Br. of Appellant at 1. The State responds that the trial court did not abuse its discretion in admitting the videotape because defense counsel had the opportunity at the time Mr. Robinson testified to conduct a thorough cross-examination. The parties have identified no precedent from any jurisdiction addressing the confrontation clause ramifications of this sort of problem with the presentation of cross-examination.

¶16 The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The primary guaranty of the confrontation clause is the right to effective cross-examination of adverse witnesses. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State v. Foster*, 135 Wn.2d 441, 456, 957 P.2d 712 (1998); *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). This includes "ensur[ing] that the witness's statements are given

under oath, [forcing] the witness to submit to cross-examination, and [permitting] the jury to observe the witness's demeanor." *State v. Price*, 158 Wn.2d 630, 640, 146 P.3d 1183 (2006). In *Crawford v. Washington*, 541 U.S. 36, 59, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the United States Supreme Court held that where a witness is absent but the State wishes to present his or her prior testimonial statements at trial, it can do so only if the witness is truly unavailable and the defendant has had a prior opportunity for cross-examination. In this case there is no dispute that Mr. Robinson was truly unavailable. There is no dispute that Mr. Turnipseed fully cross-examined this witness during his videotaped testimony prior to trial.

¶17 The first issue presented, and a simple one, is whether the confrontation clause guarantees the opportunity to *present* meaningful cross-examination in addition to conducting it; the answer is unquestionably yes. The second issue, requiring more analysis, is whether, if presentation of the cross-examination is marred by technical problems, it rises to the level of a confrontation clause violation.

¶18 A threshold issue is the standard of review. A confrontation clause challenge to the admission of evidence is reviewed de novo, not for an abuse of discretion as urged by the State. *State v. Mason*, 160 Wn.2d 910, 922, 162 P.3d 396 (2007) (a trial court's ruling on a hearsay objection is reviewed for an abuse of discretion; "[a] confrontation clause challenge is, on the other hand, reviewed de novo" (citing *Price*, 158 Wn.2d at 638-39 (whether State's admission of hearsay statements violated defendant's confrontation rights is a constitutional question subject to de novo review))), *cert. denied*, 553 U.S. 1035 (2008).[2]

---

[2] A number of federal courts have made a distinction between limitations on cross-examination within a given area that are based on nonconstitutional concerns—such as harassment, prejudice, confusion of the issues, repetition, or only marginal relevance—which are reviewed for an abuse of discretion, and whether the limitation of an area of questioning is so severe as to violate the confrontation clause, which is a question of law reviewed de novo. *See United States v. Larson*, 495 F.3d 1094, 1100-02 (9th Cir. 2007) (discussing inter- and

¶19 It is well established that a trial court that limits cross-examination through evidentiary rulings as the examination unfolds does not violate a defendant's Sixth Amendment rights unless its restrictions on examination "effectively . . . emasculate the right of cross-examination itself." *Smith v. Illinois*, 390 U.S. 129, 131, 88 S. Ct. 748, 19 L. Ed. 2d 956 (1968). Generally speaking, the confrontation clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985).

¶20 The ruling challenged here—admitting a limited presentation of an earlier-recorded cross-examination—differs in the sense that the defendant is denied the opportunity to present questions and answers that were permitted at the time the examination unfolded. In theory, however, a post hoc limitation would not deprive the defendant of his Sixth Amendment right of confrontation if the cross-examination he is allowed to present remains a meaningful examination. Of course, if the defendant is denied the opportunity to present an important portion of a recorded cross-examination, even a few moments' worth, a violation of the confrontation clause could occur.

¶21 The problem in this case is that we do not know, nor, from what can be gleaned from the record, did the trial court know, what cross-examination was lost as a result of the technical problems. Therefore, we cannot know whether the deposition as played to the jury amounted to a meaningful presentation of cross-examination as required by the Sixth Amendment. No stenographic record was prepared when Mr. Robinson originally testified, so none was available either to augment the videotaped presentation to the jury or even to apprise the trial court or us of what is missing. We note that this is contrary to the rules permitting videotaped depositions. *See* CrR 4.6(c) (depositions

intra-circuit conflicting analyses and collecting cases), *cert. denied*, 552 U.S. 1260 (2008).

"shall be taken in the manner provided in civil actions"); CR 30(b)(8)(E) (a stenographic record of the deposition shall be made simultaneously with the videotape at the expense of the noting party). By all accounts, and from the transcript available to us, the interference, while frequent, was never of a duration of more than 15 to 20 seconds. Still, to determine whether Mr. Turnipseed's confrontation right was violated by a partial presentation of his lawyer's cross-examination, the trial court should have, at a minimum, some reliable record or stipulation as to the substance of the omissions.

¶22 It is therefore most appropriate in this case to assume that a confrontation clause violation occurred and evaluate the issue in terms of harmless error. A violation of a defendant's rights under the confrontation clause does not require reversal if the error is harmless. *State v. Moses*, 129 Wn. App. 718, 732, 119 P.3d 906 (2005), *review denied*, 157 Wn.2d 1006 (2006); *Harrington v. California*, 395 U.S. 250, 251-52, 89 S. Ct. 1726, 23 L. Ed. 2d 284 (1969). Constitutional error is presumed to be prejudicial, and the State bears the burden of proving that the error was harmless. *State v. Watt*, 160 Wn.2d 626, 635, 160 P.3d 640 (2007). In Washington, a confrontation clause violation is considered harmless if "the untainted evidence is so overwhelming that it necessarily leads to a finding of the defendant's guilt." *State v. Koslowski*, 166 Wn.2d 409, 431, 209 P.3d 479 (2009). "If there is no 'reasonable probability that the outcome of the trial would have been different had the error not occurred,' the error is harmless." *Mason*, 160 Wn.2d at 927 (quoting *State v. Powell*, 126 Wn.2d 244, 267, 893 P.2d 615 (1995)). Our question becomes, then, whether there is a reasonable probability that the outcome of the trial would have been different had the court excluded Mr. Robinson's videotaped testimony.

¶23 Mr. Robinson was not an eyewitness to the crime; the scope of his testimony addressed only the mechanical condition of Mr. Turnipseed's handgun, the determination that his handgun fired the rounds retrieved from Mr.

Smith's body, and the average trajectory of shell casings landing on grass after the gun had been fired from a normal firing position. The testimony regarding the average trajectory of the bullet casings was not particularly helpful to the jury because one bullet casing landed in Mr. Smith's car while another apparently landed on pavement, both different surfaces than the grass Mr. Robinson utilized for his testing. Mr. Robinson had tested the weapon using a grass surface because it helps "keep the cartridge case in the spot that it initially lands, because any position of the cartridge case after the initial impact with the ground is totally random; it will never roll the same direction or the same distance twice." CP at 506.

¶24 Further, the eyewitnesses, while varying in their descriptions of Mr. Turnipseed's location and movement, were consistent in their testimony that Mr. Turnipseed did not fire his gun from a set stance at a normal firing angle. Mr. Turnipseed himself testified that he was "falling away" from the side of the car when he "reached up and shot the first time." RP at 990-91. The autopsy results confirm that the shots were fired at differing angles into the victim.

¶25 The undisputed testimony, including Mr. Turnipseed's own testimony asserting self-defense, established that Mr. Turnipseed fired the shots that killed Mr. Smith. The testimony of the multiple eyewitnesses and the other forensic witnesses was far more important to the matters in dispute than was the testimony of Mr. Robinson. There is no reasonable probability that the result of trial would have been different had Mr. Robinson's testimony been excluded.

¶26 We affirm the judgment and sentence.

¶27 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.

KULIK, C.J., concurs.

¶28 SWEENEY, J. (concurring) — The opinion of the court is probably correct. But it is correct only because a relatively minor problem in the trial court—a problem that was promptly, carefully, and properly addressed by the trial judge—has been characterized here on appeal as a violation of the Sixth Amendment right to confrontation.

¶29 Allan Turnipseed's right to confront this witness was not violated. His lawyer capably and thoughtfully cross-examined (confronted) this witness. The opinion of the court reflects a trend that is troublesome—the "constitutionalization" of most assignments of error in criminal cases. Criminal law is so largely based on constitutional principles that most claimed errors can be characterized as constitutional. *State v. Lynn*, 67 Wn. App. 339, 342, 835 P.2d 251 (1992). This case is a good example.

¶30 A garden-variety videotaped deposition had a few garbled questions and answers. The trial judge listened to it (the same trial judge who sat through and listened to the whole trial), heard from counsel, put the offending sections of the recording in context, and then concluded that the defendant was not prejudiced by this problem. Mr. Turnipseed confronted the State's expert witness, maybe not as perfectly as he would have liked to because of the problems with the videotape, but a confrontation nonetheless. To accept his characterization of this error as the denial of the constitutional right to confront a witness distorts the reality of what happened here and where this decision should have been made—in the trial court, not here in the Court of Appeals.

¶31 Our review, then, should be for abuse of discretion. Certainly, we exercise that discretion to decide whether a recording is sufficient to permit meaningful review on appeal. *State v. Johnson*, 147 Wn. App. 276, 282, 194 P.3d 1009 (2008).

¶32 Here, the trial court listened to the tape and concluded that Mr. Turnipseed was not prejudiced despite the problem with this tape. There certainly is no abuse of that discretion, if that were the standard. And that should have

been the end of the analysis. But we are now tasked with reviewing the assignment of error de novo because Mr. Turnipseed characterizes the error as a denial of his right to confrontation. I understand why he does so. A defendant convicted of a crime always hopes that review of his assignments of error will be de novo. And certainly some should be. *State v. Williams*, 156 Wn. App. 482, 493, 234 P.3d 1174, *review denied*, 170 Wn.2d 1011 (2010); *State v. Iniguez*, 167 Wn.2d 273, 280-81, 217 P.3d 768 (2009). But this is not one of them.

¶33 We have struggled with this problem when trying to decide whether an error rises to the level of manifest constitutional error. *State v. Naillieux*, 158 Wn. App. 630, 638-39, 241 P.3d 1280 (2010). For me, the problem here is hardly of constitutional dimensions and a reviewing court dishonors the process by treating and reviewing it as such. Indeed, there probably is no error here at all and it certainly is not an error of constitutional proportions. The court ruled that the recording was sufficiently complete to be admissible. Report of Proceedings at 501. The question should be whether there are tenable grounds or tenable reasons to support that ruling. I would have easily concluded that there were, were that the standard.

¶34 Mr. Turnipseed's defense was self-defense. He agrees he shot the victim twice. The particulars of the prejudice that Mr. Turnipseed claims because of the problems with the tape are left unsaid. Ultimately, this was a ruling on evidence, not the constitutional right to confrontation, and that is what we should be passing on. That said, I concur in the opinion of the court.

Review denied at 172 Wn.2d 1023 (2011).