# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,  )
  )  DIVISION ONE
    Respondent,  )
  )  No. 72935-7-I
  )
    v.  )  UNPUBLISHED OPINION
  )
NEN THAN PHAN,  )
  )
    Appellant.  )  FILED: April 4, 2016
_____ )

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2016 APR -4 AM 9:05

DWYER, J. — Nen Than Phan was convicted as charged on 15 counts. On appeal, he contends (1) that the trial court erred by refusing to sever the 11 sex offense counts from the 4 possession of child pornography counts, (2) that the trial court erred by denying his motion for a Franks[1] hearing, (3) that a search warrant was supported by stale evidence and should not have been issued, (4) that the trial court violated his right to an impartial jury by denying his for-cause challenge to juror 14, (5) that the trial court improperly restricted his cross-examination of one of the alleged victims, A.P., and, thus, violated his Sixth Amendment right to confront the witness, (6) that the trial court erred by allowing an employee of the Whatcom County Prosecutor's Office to testify as an expert

---

[1] Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

witness, and (7) that insufficient evidence supports the jury's verdict of guilty on count 9, a child molestation in the first degree charge involving A.D. Finding no error, we affirm.

I

Phan was born on May 13, 1958. In early 2013, he resided in Bellingham with his wife Kim,[2] their two daughters, A.P, age 15, K.P, age 8, and Kim's parents. Following a trip to Vietnam in February of that year, Kim decided to divorce Phan.

Shortly thereafter, A.P. accompanied Kim to the house of Donald Jones, a family friend, to discuss filling out the divorce paperwork. While there, A.P. disclosed to Kim, Jones, and Jones's wife that Phan had been sexually abusing her "for about five years." Following A.P.'s disclosure, Jones telephoned the police.

The case was eventually assigned to Detective Darla Wagner of the Bellingham Police Department. Detective Wagner had "[i]nnumerable" conversations with A.P., during which A.P. recounted the details of the sexual abuse by Phan. In addition, A.P. reported that she had seen Phan download pornography onto compact disks, that he would mark the compact disks containing pornography with an "X-X-X," and that she had often been subjected to watching pornography with Phan before having sexual contact with him. A.P. also expressed concern that K.P. may have been sexually abused by Phan. K.P. later spoke with law enforcement officials and confirmed that she was also a

---

[2] For clarity, we refer to Phan's wife by her first name, Kim.

victim of sexual abuse by Phan. During those conversations, K.P. revealed that her friend, A.D., was also a victim. A.D. later spoke with a law enforcement official and confirmed that on one occasion, when she had slept over at K.P.'s house, Phan had touched her "[p]rivate parts."

Detective Wagner utilized information from the interviews to obtain two separate search warrants for the Phan residence.[3] In executing these warrants, the police seized numerous items from the house including bedding, a black bag containing sex toys and lubricants, computers, cellular telephones, and compact disks.

By fourth amended information, the State charged Phan with 15 offenses: 5 counts of rape of a child in the first degree, 4 counts of rape of a child in the third degree, 2 counts of child molestation in the first degree, and 4 counts of possession of child pornography. In addition, the State charged two aggravating factors pursuant to RCW 9.94A.535: (1) that Phan had committed multiple current offenses and that his high offender score would result in some offenses going unpunished; and (2) that the offense was part of an ongoing pattern of sexual abuse of the same victim under the age of 18 years, manifested by multiple incidents over a prolonged period of time. The charged offenses involved three alleged victims: A.P., K.P., and A.D.

Before trial, Phan both moved to sever the 4 counts of possession of child pornography from the 11 sex offense counts, desiring that they be tried

---

[3] The record reflects that Detective Wagner established a basis for probable cause in support of the search warrant at issue, in part, on information that she had received in two separate conversations with A.P., one on March 29, 2013, and another on April 3.

separately, and moved to suppress certain evidence that was seized from his residence during the execution of a search warrant, requesting that the trial court conduct a Franks hearing.

In July 2014, the parties appeared before the trial court to address preliminary matters. After hearing the argument of counsel, the trial court denied both of Phan's motions.

On September 16, the case proceeded to trial. During voir dire, Phan moved to excuse juror 14 for cause. The judge denied the request. Phan then excused juror 14 by exercising a peremptory challenge.

Two days later—at the beginning of the second day of trial— Phan's counsel orally expressed a desire for the State to clarify the evidence that it intended to present to the jury on the possession of child pornography charges.

> MR. SUBIN [Defense Counsel]: Well, the only other issue that I'd like to address this morning is not a motion that I filed, but I would like to address discovery regarding the child pornography images. I have had an opportunity to look at some of that stuff but I still am not, I have not been apprised about what images the State intends to use[.] I think this issue was raised at the severance. I've asked along with the severance motion for the Court to conduct an in camera review of some of these witnesses, we'll get into that when we argue it. Aside from the severance issue I think we're entitled to a better idea what images the State intends to show the jury before we do opening statements.
>
> THE COURT: Has the State identified the images it intends to show?
>
> MR. SAWYER [Prosecutor]: In the affidavit of probable cause we've identified the videos in which the images appear, yes.
>
> THE COURT: All right. We may discuss this in more detail. . . .

. . . .

THE COURT: What is the issue in what the State intends to present as I understand it is evidence relating to four counts of possession of child pornography and the child pornography that will be introduced in support of the State's case on those four counts will be four different video images or sequences contained on a total of three DVD's; is that correct?

MR. SAWYER: No, one DVD that had 32 different videos on it and we have selected 3 of those videos for our charging purposes of the 4 counts. One is with the one that had the title "many girls 12 to 14 having sex experiences et cetera," that is a video that shows, I don't know how many, but clip attach[ed] to clip attach[ed] to clip attached to clip. It's like a montage of ongoing videos of different girls appearing to be roughly 12 to 14 years old.

THE COURT: So that one title has constant images of many different people?

MR. SAWYER: Correct. And we perhaps could have counted up all those different subjects and had, I don't know if it would have been 10 or 20 just on one video, but we didn't do that. We picked two of those and one from each of the other two videos that I've talked about.

THE COURT: I'm sorry, I'm still confused. You've got four charges.

MR. SAWYER: Right.

THE COURT: And how many video clips total that you intend to show to the jury?

MR. SAWYER: If I show the video clips there are three that I would draw, if I show the video clips or portions thereof it would be those three that I would draw from. We're not asking or intending to play any of the other titles on that disk, in fact, I've asked BPD [Bellingham Police Department], I believe they have done so at this point, to copy those three titles on to a separate disk so we can use that for court presentation if necessary and not have to use a disk that has all 32 videos on them because I don't want to have to

-5-

introduce [into] evidence 32 videos when we've only charged from 3 of those. Does that make sense?[4]

THE COURT: I think so. And 3 clips will support 4 charges that must mean that one clip is going for support 2 different charges; is that correct?

MR. SAWYER: That's correct.

THE COURT: And the 3 clips that the, so the State has identified the 3 clips it's going to use?

MR. SAWYER: Yes.

THE COURT: It just doesn't know yet whether it's going to present them in their entirety or present portions of them or present still images from them; is that right?

MR. SAWYER: Or perhaps just presenting descriptions of them by other witnesses who have viewed them.

. . . .

THE COURT: At this point I just want to be sure that discovery has been complete and Defense counsel has been able to see not just the three clips that the State has currently identified as the evidence in support of the four charges, but also any other clips that may be pertinent.

MR. SAWYER: And I've told Mr. Subin he can view whatever he wants and, that we have. And --

THE COURT: So that would be all 32 clips on the one DVD and what about other DVD's, are there other DVD's that the State may be relying on.

MR. SUBIN: It sounds like there are.

MR. SAWYER: Again, as far as showing to the jury I do not intend to show any other DVD's or any or videos on this particular DVD, just the three that the charges stem from.

---

4 The record indicates that, when the jury later viewed the videos, it viewed the videos from the original disk that was seized from Phan's residence.

THE COURT: Okay. But it sounds like if the Defendant were to says [sic] for example that I didn't know that this DVD had this particular clip on it and were to say that about the DVD that has the 32 videos which the State has identified three, if the Defendant were to say that then the State wants to reserve its right to bring into evidence, or at least to bring in testimony, regarding other DVD clips found at the Defendant's residence that contain that same clip that he has testified he didn't know he had; is that right?

MR. SAWYER: Same or similar, yes, I think that just makes sense.

THE COURT: Okay. I do too and I think the State certainly should be permitted to do that. My goal here is to avoid surprise as much as possible. And we're kind of off on another subject now, this isn't just regarding the motion to sever. I just want to be sure that the Defense has the opportunity to see any video that may be at issue because it sounds like whether it's in this trial or another trial there will be some factual dispute about the content of those videos.

So I just want to be sure that I know what the Defense has seen and it sounds like the Defense has seen or had an opportunity to see all 32 clips on the DVD the State has identified as its primary DVD.

MR. SAWYER: They have had that opportunity.

THE COURT: And you agreed you have had that opportunity, Mr. Subin?

MR. SUBIN: I mean, I guess. Maybe the detective can clarify that the DVD we were looking at is the one that we're talking about here. I don't even know that. I don't think it complies with discovery for them to say we've got hundreds of disks, we've got computers and thumb drives, all this stuff, go to [the] police department and have at it and review it all. It's overwhelming.

It's, frankly, not possible for me to go in there and watch every piece of evidence that they took from his house and I don't think that complies with the discovery rules. I think I have a right to know what they are going to show the jury and I think it has been now clarified, now in the second day of trial it has been clarified now to where if it's limited to a disk that I did view with the detective, you know, I think I have been provided fair access to that disk and I accept Mr. Sawyer saying he can't narrow it down any better than that.

So I guess from a discovery standpoint, you know, at this point there is not much that can be done about that to further clarify what evidence is actually going to be presented at the trial.

That same day, the court considered Phan's motion for reconsideration of its ruling denying severance of the 11 sex offense counts from the 4 possession of child pornography counts. The trial court adhered to its prior ruling.[5]

At trial, the jury heard from 20 witnesses. The State called sexual assault case specialist Joan Gaasland-Smith, employed by the Whatcom County Prosecuting Attorney's Office, as an expert witness. Gaasland-Smith testified that she holds "two bachelor's degrees and a master[']s degree in social work" and that, at the time of trial, she was a licensed independent clinical social worker. In addition, she stated that she had previously been a therapist in private practice where she counseled child and adult sexual assault victims, and that she had previously taught courses in child abuse and neglect at a local university. Gaasland-Smith explained that in her current role at the prosecutor's office she had reviewed "more than 3,000" sexual assault cases. Based on her education and experience, the court concluded that she was qualified to testify as an expert.

Once qualified, Gaasland-Smith offered testimony regarding general sexual abuse tendencies in children, relying on statistics and literature from an expert in the field. Phan's counsel interposed several objections to Gaasland-

---

[5] Phan renewed his motion to sever once again during trial and the trial court again adhered to its ruling.

Smith's testimony. He argued that Gaasland-Smith was not an expert, that her testimony amounted to generalities, and that it was irrelevant and highly prejudicial. In response, the trial court asked the prosecutor "to focus [his] questions on children's reactions." The trial court then instructed the jury both that "any remark [that] the witness has made about perpetrators you should know that that [sic] is in, that's background information, it's not about Mr. Phan, who is not a perpetrator, has not been established to be a perpetrator in this case or any case, that is the presumption of innocence still applies" and that it must "understand [Gaasland-Smith's] testimony, please, as being general background information on the issues of disclosure rather than any facts about this particular case."

The State also called Detective Wagner, who testified about the child pornography that was seized from Phan's home. She testified that one disk on which child pornography was found was seized from a downstairs guest bedroom and that she had "viewed each, [ ] viewed every, all 32 files on that disk." When asked to describe the titles of the files that appeared on the disk, Detective Wagner opined, "I would describe them as very sexually explicit in the nature of listing various sexual acts and/or various ages of individuals anywhere from minors to specific ages of 13, 14, 15 to adult."

Detective Wagner then listed the titles and described the content of each of the three videos on the disk upon which the charged offenses were based. The first video was entitled "R@ygold style R3T3 many girls from 12 YO to 14 YO having sex experiences." Detective Wagner explained that this video

depicted "[g]enerally two young females undressing sitting on a daybed and then progressing to what appears to be a male hand playing with their genitals." The second video was entitled, "15 YO gets raped, hymen visibly penetrated kiddy little girl young kiddyporn realkiddy child sex b.mpg." Detective Wagner explained that upon viewing this video she "immediately noted a child that appears in stature to be approximately under the age of four being vaginally penetrated by a male penis."[6] The third video was entitled, "PJK 12 YO boy fucks 12 YO girl kiddie pedo Lolita R@ygold underage.mpg." Detective Wagner explained that in this video she "observed two, a male and a female by stature and demeanor and development appear to be under the age of 18 involved in sexual intercourse." These videos were later viewed by the jury.

The jury also heard testimony from each of the alleged victims. On cross-examination of A.P., the trial court permitted Phan to inquire into whether A.P. had testified that she had never had sex with her boyfriend but restricted any inquiry into further details of this alleged sexual relationship.[7] A.D. testified that she was born on January 19, 2004, detailed Phan's act of molestation, and stated that the last time that she spent the night at Phan's house was "at the age [of] eight or nine."

---

[6] At trial, Detective Wagner agreed that the approximate 4 year old appearance of the child in the video was inconsistent with the title of the video, which indicated that the child was 15 years old.

[7] The trial judge granted a motion in limine to limit testimony about A.P.'s sexual history pursuant to the rape shield statute, RCW 9A.44.020. However, the trial judge permitted inquiry at trial as to whether A.P. had a boyfriend and any asserted conflict within her family over that fact.

The jury found Phan guilty of all counts. The jury also found that both aggravating factors had been proved. The court sentenced Phan to an indeterminate term of imprisonment, ranging from a minimum of 480 months of confinement to a maximum of life. He now appeals.

II

Phan first contends that the trial court erred by denying his motion to sever. We disagree.

Under CrR 4.3's "liberal" joinder rule, the trial court has considerable discretion to join two or more offenses of "the same or similar character, even if [they are] not part of a single scheme or plan." CrR 4.3(a)(1); State v. Eastabrook, 58 Wn. App. 805, 811, 795 P.2d 151 (1990). Nevertheless, offenses properly joined under CrR 4.3(a) may be severed "if 'the [trial] court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense.'" State v. Bythrow, 114 Wn.2d 713, 717, 790 P.2d 154 (1990) (quoting CrR 4.4(b)). A defendant seeking severance has the burden of demonstrating that "a trial involving both counts would be so manifestly prejudicial as to outweigh the concern for judicial economy." Bythrow, 114 Wn.2d at 718. Prejudice may result from joinder where the defendant is embarrassed or confounded by the presentation of separate defenses, or if a single trial invites the jury to cumulate the evidence to find guilt or infer criminal disposition. State v. Russell, 125 Wn.2d 24, 62-63, 882 P.2d 747 (1994).

In determining whether the potential for prejudice requires severance, a trial court must consider four factors that may "offset or neutralize the prejudicial

- 11 -

effect of joinder": (1) the strength of the State's evidence on each count, (2) the clarity of defenses as to each count, (3) the court's instructions to the jury to consider each count separately, and (4) the potential cross-admissibility of evidence on the other charges even if they were tried separately. Russell, 125 Wn.2d at 63; State v. Sanders, 66 Wn. App. 878, 885, 833 P.2d 452 (1992). "[A]ny residual prejudice must be weighed against the need for judicial economy." Russell, 125 Wn.2d at 63. We review a trial court's denial of a CrR 4.4(b) motion to sever counts for a manifest abuse of discretion. Bythrow, 114 Wn.2d at 717; State v. Bryant, 89 Wn. App. 857, 864, 950 P.2d 1004 (1998).

In denying Phan's motion to sever the 11 sex offense counts from the 4 possession of child pornography counts, the trial court concluded that the counts could not be easily separated "given the role that the pornography played in this case in the grooming process." The court elaborated by stating that, "the victim in this case [A.P.] alleges that watching pornography together was something that she was required to do and that it often led to sexual encounters or [that] sexual encounters followed the watching of the pornography." Ultimately— relying on the doctrine of res gestae[8]—the trial court ruled:

> I think it would be very difficult to present the fact[ual] background
> into either the pornography charges or the abuse charges to a jury
> in a way that did not refer to the other charges in a potentially
> prejudicial manner and that's simply because of the facts in the

---

[8] Testimony may be admissible as res gestae evidence "'if it is so connected in time, place, circumstances, or means employed that proof of such other misconduct is necessary for a complete description of the crime charged, or constitutes proof of the history of the crime charged.'" State v. Schaffer, 63 Wn. App. 761, 769, 822 P.2d 292 (1991) (quoting 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 115, at 398 (3d ed.1989)), aff'd, 120 Wn.2d 616, 845 P.2d 281 (1993). Res gestae evidence is admissible "in order that a complete picture be depicted for the jury." State v. Tharp, 96 Wn.2d 591, 594, 637 P.2d 961 (1981).

case and how that, how the events occurred. So I'm not prepared to sever the cases at this point and so this case will go forward with all counts included.

On reconsideration, the trial court reiterated its reliance on the doctrine of res gestae:

I'm going to deny the motion for severance. It's a difficult decision, I think it's close, but given the fact that the viewing of some pornography, including perhaps child pornography, I don't know, with [the] victim [A.P.] was a part of [the] grooming process. I continue to believe that the pornography charges are part of the res gestae or part of the big picture that covers all of the offenses in the case so I'm going to deny the motion to reconsider on that basis.

Phan relies on State v. Sutherby, 165 Wn.2d 870, 204 P.3d 916 (2009), in contending that the trial court erred and for the proposition that evidence of child pornography is so inherently inflammatory that—in virtually all cases—all possession of child pornography counts must always be severed from any and all other charges. But Sutherby does not compel the resolution that Phan urges.

Indeed, the situation in Sutherby was much different. First, in Sutherby, there was no evidentiary or testimonial connection between the child rape and molestation charges, on the one hand, and the child pornography charges, on the other. Nevertheless, in that case, "the State consistently argued that the presence of child pornography on Sutherby's computers proved he sexually abused his granddaughter, stating it 'shows his motive; why he touched L.K.'" Sutherby, 165 Wn.2d at 885. Thus, the

State argued, "[w]e know he is predisposed to touching children in a sexual manner." Sutherby, 165 Wn.2d at 886.

Second, Sutherby's jury was given "no limiting instruction directing the jury that the evidence of one crime could not be used to decide guilt for a separate crime." Sutherby, 165 Wn.2d at 886.

Third, the prosecution contended that the child pornography evidence was "admissible to show the absence of mistake or accident." Sutherby, 165 Wn.2d at 886. The Supreme Court disagreed, reasoning that, "[a]s offered here, the evidence would merely show Sutherby's predisposition toward molesting children." Sutherby, 165 Wn.2d at 886. Thus, the court concluded, "it is highly likely that evidence of Sutherby's possession of the child pornography would have been excluded in a separate trial for child rape and molestation." Sutherby, 165 Wn.2d at 886.

As will be discussed below, none of these deficiencies are present herein. First, a connection between the sex abuse counts and pornography (both child and adult) was set forth in the testimony. Indeed, testimony was abundant that Phan repeatedly required A.P. to view both types of pornography (including photos of herself) in the course of carrying out his sexual attacks on her. Second, Phan's jury was properly instructed on the need to separate the evidence on the various counts and to decide each count separately. Finally, as to the sexual abuse counts, the State did not treat the child pornography evidence as establishing a propensity

or as material to mistake or accident. Instead, the evidence was deemed admissible as part of the res gestae of Phan's various crimes against A.P. This case is not at all like Sutherby.

Indeed, the record shows that the trial court correctly applied the four-part test for severance. On the first factor, the strength of the State's evidence, the State's case was strong on all counts. "When one case is remarkably stronger than the other, severance is proper." State v. MacDonald, 122 Wn. App. 804, 815, 95 P.3d 1248 (2004). Phan claims that because he essentially had no defense to the child pornography charges, severance was required. But that is not so. Here, the personal testimony of the three alleged victims, 16, 10, and 9 years of age at the time of trial, was presented. Also presented was testimony that during the search of Phan's house, his little black bag, as described by A.P., containing sex toys and lubricant was located. A.P.'s mother testified that she was not sexually active with Phan (eliminating her as Phan's possible partner in need of the lubricant or for whom the sex toys were intended). Medical testimony, supporting A.P.'s testimony concerning sexual abuse, was presented. Donald Jones, the family friend, also testified to Phan's unusual behavior with his daughters – including instances of atypical hugging, kissing, and biting. In sum, the evidence on all counts was strong.

As to the second factor, clarity of defenses, Phan argues that he offered differing defenses to the two groups of charges, specifying that while he denied

engaging in sexual contact with any of the alleged victims of the sex abuse charges his defense to the possession of child pornography charges was either that A.P. had planted the pornography in Phan's house or no defense at all. Severance may be proper when a defendant is "'embarrassed or confounded in presenting separate defenses.'" Russell, 125 Wn.2d at 62-63; Bythrow, 114 Wn.2d at 718 (internal quotation marks omitted) (quoting State v. Smith, 74 Wn.2d 744, 755, 446 P.2d 571 (1968)). Here, Phan was not "embarrassed or confounded" in presenting a defense. In fact, his defense—general denial—was the same as to all charges. His defenses were not inconsistent. They were just weak.

Regarding the third factor, the trial court's instructions to the jury, the jury was properly instructed that "[a] separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." Appellate courts have repeatedly found this instruction sufficient to mitigate prejudice resulting from joinder. See, e.g., Bythrow, 114 Wn.2d at 723; State v. Cotten, 75 Wn. App. 669, 688, 879 P.2d 971 (1994).[9]

Regarding the last factor, the cross-admissibility of evidence, the trial court ruled that use of pornography—both child and adult—was part of the res gestae of Phan's sexual attacks on A.P. Indeed, A.P. testified that she was often

---

[9] Phan contends that, where child pornography is involved, this instruction is always ineffective and we should eliminate this aspect of the analysis. As this analysis is mandated by our Supreme Court, we decline to do so.

subjected to watching pornography prior to being subjected to sexual contact by Phan. The trial court did not err in making its res gestae ruling.

Phan also makes a related claim. At trial, only three videos of child pornography were played for the jury (as discussed at the pretrial hearing). In particular, images showing A.P.'s bare genital area—of which there was considerable testimony—were not shown (so as not to further victimize A.P.). Thus, Phan contends, the precise images shown to the jury were not established by testimony to be among the precise images show by Phan to A.P. during the course of his sexual assaults upon her. Thus, the argument goes, they fail the cross-admissibility test and were unfairly prejudicial.

This argument misses the main point: on the sex offense counts, any prejudice to Phan arose from the jury's knowledge of his possession of pornographic images featuring children. A.P. testified to this. Whether the exact images shown to the jury were or were not the precise images that A.P. had seen as part of being repeatedly abused over the years did not alter the "sting" of the child pornography charges. To prevail on his argument, Phan must be able to point to specific prejudice. Bythrow, 114 Wn.2d at 720. Here, the prejudice to Phan is the same whether the images were of A.P.'s vagina or sexual activity with a different but similarly aged person.[10] If the prejudice was not unfair prejudice where the images were of A.P. or where A.P.'s testimony would have tied them directly to her abuse, then similar images (introduced instead) did not

_____

[10] In fact, A.P. testified that she was subjected to images of sexual behavior involving adults, children, and animals at various times through the years.

- 17 -

constitute specific, unfair prejudice simply because the image itself was not tied to the commission of another charged offense. The "sting" of the child pornography images remained the same. The fairness or unfairness of displaying them to the jury was unaffected by the decision to parse out images depicting the victims of the offenses at issue herein or by not requiring A.P. to specifically identify images to which she was subjected as a prelude to her sexual abuse.

The trial court did not err by denying Phan's motion to sever.

III

Phan next contends that the trial court erred by denying his motion for a Franks hearing. This is so, he asserts, because the affiant, Detective Wagner, recklessly or deliberately misled the issuing magistrate at the time that she obtained the second search warrant by failing to inform the issuing magistrate that it had been two years since A.P. had seen some of the pornography. The record indicates otherwise.

The issuance of a search warrant is a "highly discretionary" act. State v. Chenoweth, 160 Wn.2d 454, 477, 158 P.3d 595 (2007). It is grounded in a commonsense reading of the affidavit accompanying the request and any reasonable inferences that can be drawn therefrom. Chenoweth, 160 Wn.2d at 477.

> We begin with the presumption that the affidavit supporting a search warrant is valid. [Franks v. Delaware, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)]. Under Franks, in limited circumstances, a criminal defendant is entitled to challenge the truthfulness of factual statements made in an affidavit supporting a

search warrant during a special evidentiary hearing. Id. at 155–56. As a threshold matter, the defendant must first make a "substantial preliminary showing that a false statement *knowingly and intentionally, or with reckless disregard for the truth,* was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." Id.

. . . Assertions of mere negligence or innocent mistake are insufficient. Id. [at 171.] Rather, the defendant must allege deliberate falsehood or reckless disregard for the truth. Id.

Importantly, the Franks test for material representations has been extended to material omissions of fact, [State v.] Cord, 103 Wn.2d [361,] at 367[, 693 P.2d 81 (1985)]. In examining whether an omission rises to the level of a misrepresentation, the proper inquiry is not whether the information tended to negate probable cause or was potentially relevant, but whether the challenged information was necessary to the finding of probable cause. State v. Garrison, 118 Wn.2d 870, 874, 827 P.2d 1388 (1992).

State v. Atchley, 142 Wn. App. 147, 157-58, 173 P.3d 323 (2007) (emphasis added).

Prior to hearing argument on Phan's motion, the trial judge set forth her opinion after having read the initial briefing:

My first take based on the briefs and the arguments of both counsel are, my first take is that as a factual matter I am not sure that the information presented to the magistrate in connection with the warrant application was, in fact, inaccurate. . . . I agree, in fact, I circled some of the key language that the victim said that she had seen extensive types of pornography and she said that it had been almost two years since she had seen some of that pornography. And I agree that's different from the situation we would be dealing with if she had said it has been two years since I've seen any pornography.

. . . And while I agree that it's unclear, her statement that she had not seen some of that pornography in two years is unclear, but because she didn't say that she had not seen any of that pornography for two years I would read her statement as saying it's been two years since she has seen some of the pornography but not all of the pornography or she would have said all of the

- 19 -

pornography. So I'm inclined to find that as a factual matter there was not a material misrepresentation of facts to the magistrate at least as I see the facts now.

After hearing the argument of counsel, the trial judge reiterated that, "I'm not persuaded that the information given to the magistrate was, in fact, inaccurate," and ruled that, "the Court does not see the necessity for a Franks hearing so the motion is simply denied."[11]

The trial judge's ruling was sound. The record herein indicates that Detective Wagner's affidavit relied, in part, on information obtained from two separate conversations with A.P. On appeal, other than stating that Detective Wagner deliberately or recklessly misled the magistrate—and cherry-picking from the information that Detective Wagner had obtained in her conversations with A.P.—Phan does not point to any evidence corroborating his assertion. In fact, based on the trial judge's explanation of her ruling, it is evident that she concluded that it was not Detective Wagner's presentation of the information that was misleading but, rather, A.P.'s statement to Detective Wagner (that she had not seen some of the pornography in two years) that was "unclear." Ultimately, the trial judge believed that "because [A.P.] didn't say that she had not seen any of that pornography for two years I would read her statement as saying it's been two years since she has seen some of the pornography but not all of the pornography or she would have said all of the pornography." The trial judge

_____

[11] The record indicates that the trial judge who ruled on Phan's request for a Franks hearing was also the judge who had originally signed the search warrant at issue.

- 20 -

properly concluded that Detective Wagner did not deliberately or recklessly mislead the magistrate in obtaining the search warrant.

IV

Phan next contends that the trial court erred by issuing the second search warrant for his residence. This is so, he asserts, because the search warrant was grounded on information that was stale and, thus, insufficient to establish probable cause. The record indicates otherwise.

"Probable cause exists where there are facts and circumstances sufficient to establish a reasonable inference that the defendant is involved in criminal activity and that evidence of the criminal activity can be found at the place to be searched." Atchley, 142 Wn. App. at 161.

Here, Phan avers that the second search warrant was grounded on stale information. First, the record is devoid of any indication that A.P. told Detective Wagner that the pornography had been discarded or destroyed. Second, even though A.P. stated that she had not seen some of the pornography in two years, A.P. also informed Detective Wagner that compact disks containing pornography would likely be found within the home,[12] that she had seen a picture of her bare vagina on Phan's phone—at most—"within the last three weeks to a month"

---

[12] The record indicates that the issuing magistrate was apprised of this fact at the time that she issued the search warrant:

> I knew that I had, I knew I had information that the victim had said to the detective that there were CD's present in the home and that they had, that the pornographic ones had X's on them. . . . So I think all in all there was current information in the possession of the detective that there were likely pornographic CD's in the home, it was current information that the detective had.

preceding the search warrant, and that "within the last week and a half" preceding the search warrant A.P. had seen still images of "juveniles, females, very young looking females, naked on his phone and his ipod and his computer." Given the recent nature of this information, the trial judge herein appropriately concluded that there were facts and circumstances sufficient to establish that evidence of criminal activity would be found in Phan's residence. The search warrant affidavit was sufficient to establish probable cause.

V

Phan next contends that his right to an impartial jury, guaranteed by the Sixth Amendment to the United States Constitution, was denied him. This is so, he claims, because the trial court denied his challenge for-cause to juror 14. However, Phan later exercised a peremptory challenge against the juror, who was removed from the jury. In such a circumstance, Phan does not set forth a basis for appellate relief. United States v. Martinez–Salazar, 528 U.S. 304, 311, 120 S. Ct. 774, 145 L. Ed. 2d 792 (2000); State v. Fire, 145 Wn.2d 152, 163, 34 P.3d 1218 (2001).

VI

Phan next contends that the trial court denied him his Sixth Amendment right to confront the witnesses against him by restricting his cross-examination of A.P. We disagree.

> It is well established that a trial court that limits cross-examination through evidentiary rulings as the examination unfolds does not violate a defendant's Sixth Amendment rights unless its restrictions on examination "effectively . . . emasculate the right of cross-examination itself." Smith v. Illinois, 390 U.S. 129, 131, 88 S.

Ct. 748, 19 L. Ed. 2d 956 (1968). Generally speaking, the confrontation clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. <u>Delaware v. Fensterer</u>, 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985).

<u>State v. Turnipseed</u>, 162 Wn. App. 60, 69, 255 P.3d 843 (2011) (first alteration in original).

Herein, Phan was not prevented from attacking A.P.'s testimony and credibility on cross-examination. He was simply prohibited from inquiring into a collateral specific instance of prior conduct by A.P.—the details of an alleged sexual relationship that she had with her boyfriend. The trial court's ruling in this regard, which was entirely consistent with ER 608,[13] did not "emasculate the right of cross-examination." Thus, Phan's claim fails.

## VII

Phan next contends that the trial court erred by allowing an employee of the Whatcom County Prosecutor's Office to testify as an expert witness on child sex abuse. This is so, he asserts, because the employee, Joan Gaasland-Smith, was not qualified as an expert to discuss the subjects of how sex abusers and sexual abuse victims usually behave. Further, he asserts that her testimony was irrelevant and prejudicial. We disagree with both contentions.

---

[13] ER 608(b) provides:

**Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

- 23 -

A

Phan first asserts that Gaasland-Smith was not qualified to testify as an expert. The record indicates otherwise.

The admission of expert testimony is governed by ER 702, which provides: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Before testifying as an expert, the witness is subject to the requirements of ER 702. State v. Lord, 161 Wn.2d 276, 294 n.15, 165 P.3d 1251 (2007). Thus, expert testimony is admissible under ER 702 where (1) the witness qualifies as an expert and (2) the expert's testimony would be helpful to the trier of fact. State v. Riker, 123 Wn.2d 351, 364, 869 P.2d 43 (1994).

"Practical experience is sufficient to qualify a witness as an expert." State v. Ortiz, 119 Wn.2d 294, 310, 831 P.2d 1060 (1992). However, "the expert testimony of an otherwise qualified witness is not admissible if the issue at hand lies outside the witness' area of expertise." State v. Farr–Lenzini, 93 Wn. App. 453, 461, 970 P.2d 313 (1999). The trial court's admission or rejection of expert testimony is reviewed for an abuse of discretion. Ortiz, 119 Wn.2d at 310.

The record reveals that Gaasland-Smith testified as an expert pursuant to ER 702. The trial judge herein based her finding that Gaasland-Smith was an expert on Gaasland-Smith's education and experience, including that she held a master's degree in social work, was a licensed independent clinical social

- 24 -

worker, had counseled child and adult victims of sexual abuse, had taught courses on the subject of sexual abuse and neglect at a local university, and had evaluated more than 3,000 sexual assault cases in her role at the prosecutor's office. The fact that Gaasland-Smith was an employee of the prosecutor's office did not, by itself, render her unqualified to testify. State v. Flett, 40 Wn. App. 277, 285, 699 P.2d 774 (1985) ("once basic requisite qualifications are established, any deficiencies in an expert's qualifications go to weight, rather than admissibility of testimony"); accord State v. Weaville, 162 Wn. App. 801, 824-25, 256 P.3d 426 (2011).[14] The trial court did not abuse its discretion by allowing Gaasland-Smith to present expert testimony.

B

Phan next asserts that Gaasland-Smith's testimony was both irrelevant and more prejudicial than probative. Again, the record indicates otherwise.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Relevant evidence is generally admissible. ER 402. "The threshold to admit relevant evidence is very low. Even minimally relevant evidence is admissible." State v. Darden, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). Here, Gaasland-Smith's testimony was intended to help the jury understand the general behavioral

---

[14] The record indicates that Gaasland-Smith was questioned specifically about her relationship to the prosecutor's office and her role within that office. Thus, the jury was sufficiently apprised of the factors bearing on Gaasland-Smith's credibility and sufficiently equipped with the information necessary to weigh her testimony accordingly.

tendencies and disclosure patterns that are exhibited by child victims of sexual abuse. In this regard, her testimony was relevant to determining whether the disclosures made by the three child victims in Phan's case were more or less probable. See ER 401.

Moreover, the trial court correctly analyzed whether Gaasland-Smith's testimony was substantially more prejudicial than probative. ER 403 states, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." A trial court's balancing of the evidence's probative value against its prejudicial effect or potential to mislead is entitled to great deference. State v. Luvene, 127 Wn.2d 690, 706-07, 903 P.2d 960 (1995). While, in this case, as the trial court recognized, there may have been some potential for prejudice, the court believed that such potential was outweighed by the evidence's probative value. Moreover, the trial court mitigated any potential prejudice by admonishing the jury both that Phan "has not been established to be a perpetrator in this case or any case, that is the presumption of innocence still applies" and that it must consider Gaasland-Smith's testimony for "background information on the issues of disclosure rather than any facts about this particular case." The trial court did not abuse its discretion by admitting Gaasland-Smith's challenged testimony.

- 26 -

VII

Phan next contends that insufficient evidence supports the jury's verdict on count 9, child molestation in the first degree involving A.D. This is so, he asserts, because no evidence was presented as to when that alleged incident took place. We disagree.

The due process clauses of the federal and state constitutions require that the State prove every element of a crime beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

"A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "In determining the sufficiency of the evidence, circumstantial evidence is not to be considered any less reliable than direct evidence." State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Deference must be given to the trier of fact who resolves conflicting testimony and evaluates the credibility of witnesses and persuasiveness of material

-27-

evidence." State v. Carver, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

In Jury Instruction 31, the jurors were instructed:

To convict the defendant of the crime of child molestation in the first degree, as charged in Count IX, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That between the 1st day of June 2008 and the 30th day of March 2013, the defendant had sexual contact with [A.D.];

(2) That [A.D.] was less than twelve years old at the time of the sexual contact and was not married to the defendant;

(3) That [A.D.] was at least thirty-six months younger than the defendant; and

(4) That this act occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Here, A.D. testified that her date of birth is January 19, 2004 and that the last time that she spent the night at Phan's house was "at the age [of] eight or nine." Given this information, it was reasonable for the jury to infer that Phan committed an act of molestation against A.D. in the latter part of the date range in element one—given that she was 9 years old in 2013—and that her date of birth established both that she was younger than 12 years old and that she was at least 36 months younger than Phan at the time that the offense was committed.

- 28 -

Viewed in the light most favorable to the State, this evidence is sufficient to support the jury's verdict of guilty on count 9.

Affirmed.

We concur:

_Dwyer, J._

_Trickey, J_        _Schindler, J_